In re CLASS ACTION APPLICATION FOR HABEAS CORPUS ON BEHALF OF ALL MATERIAL WITNESSES IN the WESTERN DISTRICT OF TEXAS.

In re APPLICATION FOR HABEAS CORPUS on Behalf of Pablo Abalos MARQUEZ, Rito Estrada Netro, Jose Maldonado Diaz, held as Material Witnesses in:

UNITED STATES of America

v.

Ernest MAHARD, Jr., Helen Mahard, Doing Business as Mahard Egg Company, Inc.

Pablo Abalos MARQUEZ, Rito Estrada Netro, and Jose Maldonado Diaz, Individually and on Behalf of classes which they represent

v.

William French SMITH, Helen Eversberg, William Jonas and James M. Banks, Individually, and in their official capacity and on Behalf of a class of Defendants which they represent.

Nos. DR–83–CA–46, DR–83–CR–48.

United States District Court,
W.D. Texas,
Del Rio Division.

June 28, 1985.

George Korbel, Texas Rural Legal Aid, San Antonio, Tex., for petitioners.

Raymond Nowak, Asst. U.S. Atty., San Antonio, Tex., for respondents.

## ORDER

SESSIONS, Chief Judge.

ON THIS DATE came on to be considered the Petitioners' motion for partial summary judgment.

This case has a long history that is ably summarized by both the Petitioners' and Respondents' briefs filed in relation to this

motion. The individuals involved in this cause are those persons in the Western District of Texas who are being held as material witnesses pursuant to Title 18, United States Code, Section 3144. The central issue in this case involves whether indigent individuals are entitled to representation by counsel at the time that the determination to hold them as material witnesses is made and during the time of their incarceration. It appears to this Court that formal criminal charges are rarely filed against persons held as material witnesses and therefore the right to counsel as provided by the Sixth Amendment to the United States Constitution seldom arises.

The Petitioners contend that the statutory scheme created by Title 18, United States Code, Sections 3144 and 3142 requires the appointment of counsel to represent indigent persons held as material witnesses. It also appears that the Petitioners claim that there is a constitutional right to representation by counsel where an individual faces incarceration as a material witness.

The Respondents appear to concede that the provisions of 18 U.S.C. §§ 3144 and 3142 provide for appointment of counsel for persons arrested as material witnesses. *See* Respondents' Supplemental Reply Brief filed May 20, 1985. The Respondents, however, remain steadfast in their contention that they are unable to provide the relief sought by the Petitioners. The Respondents base this argument upon their belief that it is the Court who appoints counsel to represent indigent individuals, not the Government. Thus, while the Respondents may agree that material witnesses are entitled to representation, they do not believe that they are the proper parties to provide the relief sought, and thus argue that they are not proper parties to this suit insofar as the suit relates to representation of material witnesses.

■ This Court has reviewed the submissions of both parties and agrees with the Petitioners that material witnesses are entitled to representation. The Court also agrees with the Respondents that the Court, not the Respondents, is the appropriate body to afford the relief sought by the Petitioners. Nevertheless, this Court believes that the issue of representation of material witnesses must be addressed and further believes that it is appropriate to do so in this cause. Consequently, this Court will grant, in part, the Petitioners' motion for partial summary judgment and will require the Judges of the Western District of Texas to take immediate steps to provide representation for persons that the Government seeks to hold as material witnesses in the future.

Section 3144 was added to Title 18 by the Comprehensive Crime Control Act of 1984, Pub.L. 98–473, 98 Stat. 1982 (1984). Section 3144 provides that:

> If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142. No material witness may be detained because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice. Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure.

Section 3144 changed the law as it applied to material witnesses in two ways. First, Section 3144 unambiguously provides that material witnesses are to be treated in accordance with Title 18, United States Code, Section 3142 which addresses the release of defendants prior to trial. Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, 1984 U.S.CODE CONG. & AD. NEWS (98 Stat.) 3182, 3211–3212. Second, Section 3144 explicitly grants authority to a judicial officer to order the arrest of a person as a material witness. *Id.*

Title 18, United States Code, Section 3142 was also amended by the Comprehensive Crime Control Act of 1984. Section 3142 provides for the release or detention of a defendant pending trial. If a judicial officer determines that a defendant should not be released on his own recognizance or on an unsecured appearance bond, a hearing must be held to determine whether any condition or combination of conditions can be imposed upon the defendant that will reasonably assure his appearance at trial and the safety of any other person and the community. 18 U.S.C. § 3142(a), (b), (c) & (f). The judicial officer is required to hold a hearing immediately upon an individual's first appearance before him.

> The hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance.... *At the hearing, the person has the right to be represented by counsel, and, if he is financially unable to obtain adequate representation, to have counsel appointed for him....*

18 U.S.C. § 3142(f) (emphasis added).

▮▮▮ It is clear that Section 3142(f) contemplates the appointment of counsel for defendants that are financially unable to secure representation.

> The procedural requirements for the pretrial detention hearing set forth in section 3142(f) are based on those of the District of Columbia statute which were held to meet constitutional due process requirements in *United States v. Edwards*. The person has a right to counsel, and to the appointment of counsel if he is financially unable to secure adequate representation.

Comprehensive Crime Control Act of 1984, Pub.L. 98–473, 1984 U.S.CODE CONG. & AD.NEWS (98 Stat.) 3205. A reading of Section 3144 and its legislative history shows that Congress intended the provisions of Section 3142(f) to apply in cases where an individual is sought to be incarcerated as a material witness. Thus, this Court believes that where an individual is arrested and the government seeks to detain him as a material witness pursuant to Section 3144, and a judicial officer determines that the individual should not be released on his own recognizance or on an unsecured appearance bond, an attorney must be appointed to represent the individual if he is financially unable to obtain representation.[1]

This Court's conclusion that material witnesses are entitled to representation is made obvious by a careful reading of the statutory scheme set forth by Sections 3144 and 3142. The Court's interpretation of Sections 3142 and 3144 is supported by recent amendments to the guidelines for the administration of the *Criminal Justice Act* approved by the United States Judicial Conference at its March 1985 proceedings. The Judicial Conference inserted a new paragraph 2.15 in its guidelines entitled *Representation of a Material Witness.* The paragraph provides in part that:

> While subsection (g) of the CJA provides for the discretionary appointment of counsel for a person in custody as a material witness "when the interests of justice so require," the Bail Reform Act of 1984 *requires* that counsel be appointed to provide representation at a detention hearing for a person who has been arrested as a material witness.

Vol. VII, *Guide to Judiciary Policies and Procedures,* Section A, Chapter 2, paragraph 2.15 (emphasis in original).

It is this Court's opinion that existing statutory law requires the appointment of counsel to represent persons detained as material witnesses who are financially unable to afford representation. In addition, this Court is of the opinion that appointment of counsel to represent material wit-

---

1. This Court believes that Section 3142(f) requires a detention hearing only when a judicial officer determines that an individual should not be released on his own recognizance or on an unsecured appearance bond. *See* 18 U.S.C. § 3142(a), (b), (c) & (f). Because § 3142(f) controls appointment of counsel, this Court believes that it requires counsel to be appointed only if conditions of release are sought to be imposed pursuant to § 3142(c).

nesses is required by the Fifth Amendment to the Constitution.

■ The Fifth Amendment provides in pertinent part that: "[n]o person shall ... be deprived of life, liberty, or property, without due process of law...." It has long been held that aliens, even those who are in this country unlawfully, are "persons" guaranteed due process of law by the Fifth Amendment. *Plyler v. Doe*, 457 U.S. 202, 210, 102 S.Ct. 2382, 2391, 72 L.Ed.2d 786 (1982); *Galvan v. Press*, 347 U.S. 522, 530, 74 S.Ct. 737, 742, 98 L.Ed. 911 (1954); *Shaughnessy v. United States*, 345 U.S. 206, 212, 73 S.Ct. 625, 629, 97 L.Ed. 956 (1953); *Wong Wing v. United States*, 163 U.S. 228, 238, 16 S.Ct. 977, 981, 41 L.Ed. 140 (1896); *Yick Wo v. Hopkins*, 118 U.S. 356, 369, 6 S.Ct. 1064, 1070, 30 L.Ed. 220 (1886). Thus, the Fifth Amendment protects aliens who are in this country unlawfully from invidious discrimination by the federal Government. *Plyler v. Doe*, 457 U.S. at 210, 102 S.Ct. at 2391; *Matthews v. Diaz*, 426 U.S. 67, 77, 96 S.Ct. 1883, 1890 (1976). The Fifth Amendment also protects illegal aliens from deprivations of liberty without due process of law.

■ It is clear that "commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979); *see also Jones v. United States*, 463 U.S. 354, 361, 103 S.Ct. 3043, 3048, 77 L.Ed.2d 694 (1983). The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 168, 71 S.Ct. 624, 646–47, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). What process is constitutionally due, however, is another matter.

■ The fundamental requirement of due process is an opportunity to be heard. *Parratt v. Taylor*, 451 U.S. 527, 540, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981). In this regard, the opportunity to be heard must be given at a meaningful time and in a meaningful manner. *Id.; Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). The requirements imposed by the due process clause of the Fifth Amendment, however, are flexible and vary depending upon the particular situation presented. *Matthews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); *see Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 872, 74 L.Ed.2d 675 (1983) (in context of Fourteenth Amendment Due Process Clause). The Court must consider three factors to determine what process is constitutionally due:

> First, the private interests that will be affected by the official action; second, the risk of an erroneous deprivation of such interests through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Matthews v. Eldridge*, 424 U.S. at 335, 96 S.Ct. at 903; *see also Hewitt v. Helms*, 459 U.S. at 472, 103 S.Ct. at 872.

The private interests at stake where material witnesses are concerned strike at the very heart of the values sought to be protected by our Constitution—liberty. The vast majority of persons held as material witnesses in the Western District of Texas are not innocent. In most cases, the persons are held in connection with cases involving the illegal transportation of aliens. Usually individuals held as material witnesses were brought to this country unlawfully. Thus, in this District, persons held as material witnesses could be charged with unlawful entry into the United States in violation of Title 8, United States Code, Section 1325. Nevertheless, individuals detained as material witnesses are rarely charged with crimes.

With no charges lodged against them, material witnesses are held in custody for periods ranging from several weeks to sev-

eral months. If the material witness were charged with a crime, he would be entitled to appointment of counsel if he was financially unable to afford one. The material witness is deprived of liberty without an opportunity to consult with counsel or to have his interests represented because he is not charged with a crime. Consequently, individuals that are incarcerated without being charged with criminal activity are afforded less protection than individuals charged with criminal activity.[2]

■ The second factor to be considered is whether utilization of extant procedures creates the risk of an erroneous deprivation of an individual's liberty and whether any additional safeguards will protect against such a risk. This Court takes judicial notice of the fact that the vast majority of individuals held as material witnesses in the Western District of Texas are Latin American. For the most part these individuals are uneducated and do not speak the English language. In this District, most individuals brought before a Magistrate to determine whether they should be held as material witnesses are without representation and unable to challenge the evidence relied upon by the Government to support holding them as material witnesses.[3] If the determination is made that an individual should be held as a material witness, the individual must be treated in accordance with the provisions of 18 U.S.C. § 3142. Again, if the individual is unable to understand the proceedings in which he is involved, he will be unable to introduce evidence that might weigh in favor of his being released on a personal recognizance bond or on a bond imposing less onerous conditions than might ordinarily be imposed.

■ As a final matter, this Court is of the opinion that 18 U.S.C. § 3144 requires that an individual incarcerated as a material witness be deposed if certain requirements are met. Without the assistance of counsel, it is this Court's belief that depositions of material witnesses rarely go forward and that as a consequence the incarceration of material witnesses is prolonged. Thus, this Court is of the opinion that extant procedures not only create the risk of erroneous deprivations of liberty, but also create the risk of unnecessarily prolonged deprivations of liberty.

While this Court does not believe that the appointment of counsel to represent a material witness will solve all of the problems that surround the incarceration of individuals who are not charged with crimes, this Court firmly believes that the appointment of counsel to represent these individuals will ensure that any decision to continue their incarceration is well reasoned and based upon full consideration of all relevant evidence. In addition, appointment of counsel will help ensure that a material witness receives all of his rights as set forth in 18 U.S.C. § 3142, and will ensure that any conditions imposed upon the release of the individual will be only as stringent as is required to secure his presence as a witness at trial. Lastly, counsel appointed to represent the material witness can ensure that the material witness receives all rights available to him under 18 U.S.C. § 3144 and Rule 15 of the Federal Rules of Criminal Procedure regarding the deposition of individuals prior to trial.

This Court believes that appointment of counsel will be beneficial to individuals incarcerated as material witnesses in three distinct areas. Appointment of counsel will

**2.** This Court notes that often a defendant charged with unlawful transportation of aliens is released under 18 U.S.C. § 3142 while individuals held as material witnesses in connection with the case are incarcerated until the case is disposed of.

**3.** This Court realizes that, due to the delay involved, it would be impracticable to have counsel appointed to represent an individual sought to be held as a material witness at the time of his initial appearance before the Magistrate. Nonetheless, after the initial determination is made that an individual should be held as a material witness, counsel appointed to represent the individual could move for the Court to reconsider its Order. The motion to reconsider should be heard prior to or at the same time as the detention hearing required by 18 U.S.C. § 3142(f).

ensure 1) that it is appropriate to detain the individual as a material witness; 2) that the individual will not be incarcerated when there are other means available to secure his presence at trial; and 3) that any incarceration of an individual will not be prolonged unnecessarily. The value of this additional safeguard is obvious to this Court.

The final factor that the Court must consider involves the "Government's interests, including the function involved and the physical and administrative burdens that the additional or substitute procedural requirement would entail." This Court recognizes that the Government has a substantial interest in securing essential testimony for use in criminal trials. Nevertheless, this Court does not believe that affording counsel to individuals threatened by incarceration will impair that interest. The Court also realizes that appointment of counsel to represent material witnesses will involve a great deal of expense. Funds will have to be appropriated to compensate attorneys appointed by the Court. On the other hand, if appointment of counsel facilitates the desirous effect of causing material witnesses to be deposed in accordance with procedures set forth by 18 U.S.C. § 3144 and Rule 15 of the Federal Rules of Criminal Procedure, incarcerated individuals should be released from prison at an earlier date than would otherwise occur. Thus, there is the possibility that shorter terms of incarceration and the decrease in costs of jailing material witnesses, could offset any expense incurred by appointing counsel to represent indigent individuals.

■ The Court realizes that appointment of counsel to represent material witnesses will involve additional court proceedings. Nevertheless, the additional burden on the Court and on counsel is more than outweighed by the liberty interest of material witnesses.

Upon a balance of the factors set forth in *Matthews v. Eldridge, supra,* this Court is of the opinion that the scales weigh strongly in favor of appointing counsel to represent material witnesses who are financially unable to afford counsel. Indeed, this Court believes that the due process requirement of a meaningful opportunity to be heard cannot be met unless counsel is appointed. In the context of an accused's right to counsel, the Supreme Court has said:

> The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have [sic] a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate or those of feeble intellect.

*Powell v. State of Alabama,* 287 U.S. 45, 68–69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932). In *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) the Court stated:

> [I]n our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. This seems to us to be an obvious truth. Government, both state and federal, quite properly spend vast sums of money to establish machinery to try defendants accused of crime. Lawyers to prosecute are everywhere deemed essential to protect the public's interest in an orderly society. Similarly, there are few defendants charged with

crime, few indeed, who fail to hire the best lawyers they can get to prepare and present their defenses. That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the widespread belief that lawyers in criminal courts are necessities, not luxuries. The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him.

372 U.S. at 344, 83 S.Ct. at 796.

■ While both *Gideon* and *Powell* involved the right to counsel where an individual was accused of a felony, this Court believes that their rationale is relevant to any proceeding where an individual is for the first time threatened with a loss of liberty.[4] *See Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) (indigent individual charged with misdemeanor entitled to appointment of counsel); *see also In Re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (right to representation in juvenile proceeding where juvenile facing potential incarceration). This Court does not believe that categorizing a case as criminal or civil is controlling when an individual faces a loss of liberty. *Ridgway v. Baker,* 720 F.2d 1409, 1413 (5th Cir.1983). Counsel is re-

quired so that the material witness may know precisely what is happening, so that he is aware of the prospect of incarceration, and so that he is treated fairly by the prosecution. Consequently, this Court will grant the Petitioners' motion for partial summary judgment insofar as it seeks a ruling from this Court that individuals held as material witnesses in the Western District of Texas are entitled to appointment of counsel when they are financially unable to retain their own.

■ This Court will deny the Petitioners' motion for partial summary judgment insofar as it seeks to have all currently incarcerated material witnesses released where those individuals have not been appointed counsel. To do so would unfairly penalize the Government. The Court will also deny the Petitioners' alternative request seeking immediate appointment of counsel to represent all material witnesses who are presently incarcerated. In addition, this Court will not require that presently incarcerated material witnesses be immediately deposed and then released. Due to the number of persons presently incarcerated as material witnesses in this District, the Court does not believe it to be administratively feasible to mandate immediate relief. The Court will, however, require compliance with this Order by a specific date.

This Court realizes that each Division of the Western District of Texas has unique problems that arise when competent counsel are sought to be appointed to represent indigent individuals. Consequently, this Court believes that a uniform plan for appointing counsel to represent individuals held as material witnesses is not advisable. Thus, this Court will direct that the presid-

---

**4.** This Court would distinguish the limited right to counsel established by *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), in probation revocation cases. In the case of a probation revocation, the individual has already been convicted of a crime and, in many instances, has been sentenced by the court. All that needs to be determined is whether the individual complied with the terms of his probation, and, if not, the court must make the determination of whether it should exercise its

discretion in favor of revocation. In the case of individuals to be held as material witnesses, they have not been convicted of a crime and they are facing a deprivation of liberty without being charged with criminal activity. While in both instances a liberty interest is at stake, this Court believes that the quality of the liberty interest involved where an individual is neither convicted nor accused of a crime is different than that held by an individual who has been tried, convicted and sentenced.

ing United States District Court Judge in each division of this District shall institute a plan to provide for the representation of material witnesses. If the presiding Judge in a Division would prefer not to draft and implement a plan in accordance with this Order, he may have the District's Chief Judge take steps to prepare that Division's procedure. This Court will require that each Division adopt and institute a plan for appointing counsel to represent material witnesses no later than August 2, 1985. The plans adopted by each Division shall have prospective application only.

With regard to individuals presently incarcerated as material witnesses, this Court will require that counsel be appointed to represent such individuals only if they remain in custody after July 15, 1985. Thus, unless individuals presently incarcerated as material witnesses are released by July 15, 1985, this Court will require that counsel be appointed to represent those who are financially unable to retain counsel. This Court realizes that requiring either appointment of counsel or release of presently incarcerated material witnesses by July 15 creates a burden on the Court and counsel for both the Government and defendants. Nevertheless, this Court believes that any burden is far outweighed by the liberty interest possessed by persons incarcerated without being charged with any crime. Therefore,

IT IS HEREBY ORDERED that the Petitioners' motion for partial summary judgment be GRANTED insofar as it seeks a determination by this Court that individuals held as material witnesses in the Western District of Texas are entitled to appointment of counsel when they are financially unable to retain their own and is otherwise denied in all respects.

IT IS FURTHER ORDERED that the presiding District Court Judge in each Division of the Western District of Texas shall draft and implement a plan for appointing counsel to represent individuals held as material witnesses no later than August 2, 1985. If the presiding Judge in any Division would prefer to have the District's

Chief Judge prepare a plan in accordance with this Order, he should immediately inform the Chief Judge of his preference. These plans shall be applicable only to those individuals held or sought to be held as material witnesses after August 2, 1985.

IT IS FURTHER ORDERED that unless individuals presently incarcerated as material witnesses in the Western District of Texas are released by July 15, 1985, attorneys shall be appointed to represent those individuals to the extent that they cannot financially afford to retain an attorney on their own.